IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 2:20-CR-00072 |
| | : | |
| JON DETEMPLE, | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

AND NOW comes the defendant, Jon DeTemple ("Mr. DeTemple"), by and through his attorney, Samir Sarna, Esq., who hereby submits the following Sentencing Memorandum. Mr. DeTemple requests a downward variance on his potential sentence founded in an analysis of the sentencing factors stated in 18 U.S.C. § 3553(a). The sentence imposed must be "sufficient, but not greater than necessary, to comply with the purposes" set forth in the Sentencing Guidelines. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Mr. DeTemple respectfully requests that this Honorable Court sentence him to the minimum, five-year period of incarceration, contemplated in the plea agreement. Mr. DeTemple requests this Court to recommend placement into a sex offender program (SOMP), specifically, Federal Correctional Institute Elkton located in Lisbon, Ohio. Mr. DeTemple understands that the Bureau of Prisons determines where an offender serves a sentence, but he does request this Court to make a recommendation for FCI Elkton's SOMP program. In support of this request, the following is offered for consideration:

**I.      PROCEDURAL POSTURE**

Mr. DeTemple was charged by information to one count of Possession of Material Depicting the Sexual Exploitation of a Minor (18 U.S.C. § 2252(a)(4)(B) and § 2252(b)(2)) on April 13, 2020. A Waiver and Change of Plea Hearing was held on August 24, 2020, at which time Mr. DeTemple waived an indictment and pleaded guilty to the prosecutor's information. Mr.

DeTemple filed his Position with Respect to Sentencing Factors on November 18, 2020 objecting to a two-level upward enhancement under USSG § 2G2.2(b)(3)(F). The sentencing hearing is currently scheduled for May 11, 2021.

## II.     PERSONAL INFORMATION AND BACKGROUND

Mr. DeTemple is 32 years old and has lived in Washington, Pennsylvania for most of his life with the exception of an approximately two-year period when he attended college in Florida. Mr. DeTemple is an only child. Growing up, he lived with his mother and father until their divorce in 1999, when he was 11 years old. During his adolescent years, he would travel between his mother and father's separate residences pursuant to a shared custody agreement. Mr. DeTemple lived in a nice, middle class neighborhood, and enjoyed a normal childhood. Although they are divorced, both of Mr. DeTemple's parents still live in Washington, PA, and Mr. DeTemple has positive relationships with both his mother and father. He is also close to his grandmother who owns the home where Mr. DeTemple and his mother reside.

Mr. DeTemple attended Trinity High School in Washington, PA, where he did well as a student. He was enrolled in many advanced placement and college preparatory courses and did not have any disciplinary actions or other issues while in high school. After graduating from high school with about a "B" average, Mr. DeTemple attended Full Sail University, located in Winter Park, Florida. He received a bachelor's degree in Game Art and Design in 2009. This is typically a four-year, bachelor's degree program, however, Mr. DeTemple successfully completed this program in two years.  Mr. DeTemple then returned to Washington, PA to live with his mother and grandmother in a very stable and loving home, at the address where he currently resides.

For the past 10 years, Mr. DeTemple was gainfully employed at Old Navy, most recently as one of the store's Assistant Managers of the clothing division. Mr. DeTemple never had any

disciplinary action taken against him at work and was highly regarded by his colleagues. Mr. DeTemple also received numerous promotions over his 10-year tenure. Upon entering his plea of guilty to this information, Mr. DeTemple was terminated from his employment with Old Navy. He has sought alternative means of employment but has had a hard time finding stable employment due to the ongoing COVID-19 pandemic and the status of his criminal case. He applied to over 20 jobs but did not have any luck obtaining work. In addition, he did complete some community service hours while awaiting his sentencing hearing. Mr. DeTemple expresses a desire to return to the workforce upon completion of his sentence. Mr. DeTemple has never been addicted to alcohol, drugs, or other controlled substances. By all accounts, he has led a generally quiet life, characterized primarily by his commitment to education, work, and being with his family.

Immediately after retaining counsel, Mr. DeTemple started to receive mental health treatment. Mr. DeTemple participated in a forensic mental health risk assessment with Dr. Allan Pass, Ph.D., Director of National Behavioral Science Consultants ("NBSC"), on March 4, 2020. Dr. Pass' report of this assessment is attached for this Honorable Court's review as Defense Exhibit "A." Dr. Pass echoed the sentiments about Mr. DeTemple's childhood contained in this memorandum and also the PSR, noting that Mr. DeTemple had a very healthy, loving childhood despite splitting time between both parent's homes in his adolescent years.[1] However, Mr. DeTemple shared with Dr. Pass that he feels significantly disconnected from others socially.[2] Importantly, Dr. Pass performed a risk analysis of Mr. DeTemple. This analysis determines a probability range for an individual's risk of reoffending. Dr. Pass noted that Mr. DeTemple exhibits a low risk for becoming a reoffender of sexual crime.[3] In so concluding, Dr. Pass discussed

---

[1] Exhibit A, p.3.
[2] *Id.*
[3] Exhibit A, p.8.

two important assessments of Mr. DeTemple's personality and behavior.

First, Dr. Pass utilized the HARE Psychopath Checklist Revised ("PCL-R"), which is a means of assessing an individual's propensity for engaging in psychopathic behaviors.[4] After this portion of the examination, Dr. Pass classified Mr. DeTemple as a "very low probability risk" for the presence of psychopathy.[5] Second, Dr. Pass administered the Minnesota Multi-Phasic Personality Inventory, 2nd Edition, Forensic Version ("MMPI-II"), to predict possible future behaviors and behavioral problems of an individual.[6] This assessment demonstrated that Mr. DeTemple is a shy, hypersensitive, and insecure person who has trouble opening himself up to relationships, which leads to social detachment.[7] Dr. Pass noted that a structured sexual offender treatment program is warranted, along with a community-based treatment program, to help Mr. DeTemple rehabilitate his behaviors related to sexual crimes.[8] Mr. DeTemple voluntarily entered a sexual offender treatment program endorsed by the Commonwealth of Pennsylvania in November of 2019, and has been successfully engaged in that program to the present day. Mr. DeTemple has met all of the ordered program objectives in his treatment. Most importantly, Dr. Pass concluded that Mr. DeTemple is low risk for committing other sexual crimes in the future, and further completion of a treatment program will continue to aid Mr. DeTemple's rehabilitation.[9] In addition to the initial assessment and report, a copy of a treatment status summary and polygraph results have been submitted as exhibits to this memorandum.

## III.     THREE-STEP SENTENCING PROCESS

---

[4] Exhibit A, p.5.
[5] *Id*.
[6] Exhibit A, p.6.
[7] *Id.*
[8] Exhibit A, p.8.
[9] *Id.*

There is a three-step process which the District Courts must follow when sentencing a defendant. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). First, the Court must calculate the defendant's guideline sentence; second, the Court must rule on both parties' motions for departure; and third, the Court must weigh the sentencing factors under 18 U.S.C. § 3553(a) when imposing a sentence. *Id.*

### A. Sentencing Calculation

Mr. DeTemple's base offense level for (18 U.S.C. § 2252(a)(4)(B)) is "18." The PSR notes several upward enhancements applicable to Mr. DeTemple, including a two-level upward enhancement for distribution of material depicting the sexual exploitation of a minor. This enhancement is disputed which is noted in Defendant's Position with Respect to Sentencing Factors. There is a three-level downward enhancement based on acceptance of responsibility. Mr. DeTemple's total offense level, not including the disputed two-level upward enhancement for distribution, is "28."[10] Also, Mr. DeTemple criminal history category is "I," as Mr. DeTemple has never had any prior involvement with law enforcement. Mr. DeTemple's standard guideline sentencing range is 78-97 months.[11] The PSR also includes that there is a five-year mandatory floor on Mr. DeTemple's sentence.

### B. Applicability of Departure under USSG §2G2.2(b)(3)(F)

After calculating a defendant's guideline range, the district court shall next consider all motions for a departure by either party. *Gunter*, 462 F.3d at 247. A sentencing court can depart downward on a defendant's criminal history category, but a Court may not depart on a defendant's offense level. *United States v. Grier*, 585 F.3d 138, 143 (3d Cir. 2009) ("Consistent with *expressio*

---

[10] The PSR includes the two-level upward enhancement for distribution under USSG § 2G2.2(b)(3)(F), which would give Mr. DeTemple an offense level of "30."
[11] Using the PSR's offense level and criminal history category, the guideline range would be 97-121 months.

*unius est exclusio alterius*, the inclusion of criminal history category in definition [of the 2003 Amendment to USSG § 4A1.3] without mention of offense level expresses the Commission's intent to preclude offense level departures under § 4A1.3."). As Mr. DeTemple noted in his Position with Respect to Sentencing Factors [ECF No. 25], Mr. DeTemple objects to a two-level upward enhancement for distribution of material depicting the sexual exploitation of a minor, USSG §2G2.2(b)(3)(F). Though Mr. DeTemple is foreclosed from arguing for downward departures on his offense level, Mr. DeTemple simply reiterates his arguments contained within the Position with Respect to Sentencing Factors. Additionally, Mr. DeTemple points out that the United States Sentencing Commission recommended changes in the guidelines based on currently available technologies and specifically noted peer-to-peer file sharing programs. U.S. SENTENCING COMM'N, REPORT TO CONGRESS: FEDERAL CHILD PORNOGRAPHY OFFENSES (2012) at xix-xxi [hereinafter "2012 COMMISSION REPORT"], available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf.

Many federal courts have found issues with the application of § 2G2.2 as technology improves. In *United States v. Grober*, 624 F.3d 592 (3d. Cir. 2010), the Third Circuit affirmed the district court's decision to sentence a defendant to the mandatory minimum five-year sentence when the defendant's advisory guideline range was 235-293 months. *Grober*, 624 F.3d at 595. In finding no abuse of discretion by the district court, the Third Circuit noted the research and findings in a paper written by Assistant Federal Public Defender Troy Stabenow, which concluded that USSG § 2G2.2 was flawed. *Grober*, 624 F.3d at 603; *see also* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* [hereinafter "Stabenow paper"], available at https://www.fd.org/sites/default/files/criminal_defense_topics/essential_topics/sentencing_resour

ces/deconstructing_the_guidelines/fsr-2011-24-2-108.pdf.. Stabenow "comprehensively traced the history of § 2G2.2 and supported, with a fair amount of research, Stabenow's conclusion that § 2G2.2 was flawed and why." *Id.* The Stabenow paper was quickly referenced by district and circuit courts throughout the United States. *Id.* In the Stabenow paper, one of the biggest criticisms of § 2G2.2 is that it does not distinguish between how a defendant is using their device, and that the enhancement simply applies despite the relative culpability. Stabenow paper at 16. In 2006, 97% of the defendants charged with crimes of depicting child exploitation used a computer in commission of the offense, but that does not mean that all their conduct is equal. *Id.* Stabenow illustrates that one's use of a computer matters to determine their culpability through the following example:

> "Downloading cyberporn is similar to receiving child pornography through the mail…At the other end are large-scale, commercial pornographers. Creating and maintain a B[ulletin] B[oard] S[ystem] or website with pornography is similar to opening an adult bookstore…persons who upload, send, or post illegal images to accessible sites should be held accountable for the harm done when child pornography is widely disseminate[d] or falls into the hands of children."

*Id.* (internal quotations omitted) (internal citations omitted). Stabenow further explains that the Commission saw § 2G2.2 as dependent upon two primary considerations: "The seriousness of the crime involving computerized trafficking in child pornography depends in part on 1) the degree to which the computer use facilitates widespread and instantaneous distribution of images, and 2) the degree to which it increases the likelihood that children will be exposed to the images." Stabenow paper at 16. Because the enhancement does not differentiate between an actor's relative culpability in using a computer, many defendants are being punished with the enhancement even though their conduct is not the type of harm intended to be addressed by the enhancement. *Id.*

The Court in *Gruber* also specifically referenced a 2009 Sentencing Commission Report

to Congress, *see* United States Sentencing Commission, THE HISTORY OF THE CHILD PORNOGRAPHY GUIDELINES (Oct. 2009), [hereinafter 2009 COMMISSION REPORT], http://www.ussc.gov/general/20091030_History_Child_Pornography_Guidelines. pdf. The district court, and subsequently the Third Circuit, discussed the 2009 COMMISSION REPORT in the context of § 2G2.2's history and series of amendment. The Third Circuit noted that § 2G2.2 is different because the guidelines were generated pursuant to congressional directives, rather than the Commission's "characteristic institutional role" and developed pursuant to research and study. *Id.* at 600-01. Additionally, both the district court and the Third Circuit found that that the enhancements "are essentially inherent in the crime and, thus, apply in nearly every case" to produce an "outrageously high sentence." *Id.* at 597.

Furthermore, the United States Sentencing Commission addressed these concerns with the 2016 amendments to both the two-level and five-level distribution enhancement under USSG § 2G2.2(b)(3)(F). United States Sentencing Commission, AMENDMENTS TO THE SENTENCING GUIDELINES at 9-12, Apr. 26, 2016, [hereinafter 2016 AMENDMENTS], available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20160428_RF.pdf. The Commission recognized a circuit split regarding the knowledge requirement contained within § 2G2.2(b)(3)(F). The split is mainly between the Fifth, Tenth, and Eleventh Circuits, which applied the two-level enhancement "if the defendant used a file-sharing program, regardless of whether the defendant did so purposefully, knowingly, or negligently," and the Second, Fourth, and Seventh Circuits, which "requires a showing that the defendant knew of the file-sharing properties of the program." 2016 AMENDMENTS at 11. The Commission largely adopted the latter approach in its amendments and requires a showing that the defendant knew of the file sharing properties. Absent a showing that Mr. DeTemple actually knew

that his profile on the file-sharing network was actively sharing, the enhancement is not warranted.

The government argues that Mr. DeTemple was distributing the material by way of using bit torrent software. Bit torrent software relies on passive sharing to host and trade files from device to device or user-to-user. Mr. DeTemple checked yes on a click-wrap agreement to use the software that was used to obtain the illegal material in this case. However, on the Government's own admission, the agreement only requires one to click "yes I agree" and does not even require the user to "scroll" through the entirety of the agreement. It should also be noted that many of the files in this case were located on a removable hard drive. The act of downloading the content onto a removable hard drive evidences a lack of intent to share the material. There is certainly a distinction to be made between the active sharing of files through use of bit torrents where users download files and then may unknowingly leave the files on the server for others to download and being in a chat room trading file-for-file with other parties. The fact that he signed a clickwrap agreement and may have unknowingly agreed that files could be uploaded from his bit torrent application should not equate him with those that openly engage in trading child pornography.

Mr. DeTemple further notes that in the Government's Response [ECF No. 31], the Government relies exclusively on *United States v. Prophet,* 644 Fed. App'x 128 (3d Cir. 2016) (*memorandum*) (*per curiam*). This case, however, is reported in the Federal Appendix and is therefore not precedential authority. The United States' response seems to suggest that the issue raised was conclusively decided by *Prophet,* but that is not so. Though Mr. DeTemple cited cases from other jurisdictions which are also only persuasive authority on this matter, this Honorable Court is not precluded from deciding that the enhancement is not warranted based upon Mr. DeTemple's conduct because *Prophet* is not conclusive on the matter. This Honorable Court can, and should, agree with Mr. DeTemple's assertions in his Position with Respect to Sentencing

Factors, which can be done without running afoul of the principles of *stare decisis*.

### C. Analysis of Sentencing Factors Under 18 U.S.C. §3553(A)

The final step in the sentencing process is to analyze the factors set forth in 18 U.S.C. § 3553(a). *Gunter*, 462 F.3d at 247. The sentencing guidelines are not mandatory but are an advisory consideration that are linked with the offender's "real conduct" and the sentencing factors expressed in 18 U.S.C. § 3553(a). The factors set forth in 18 U.S.C. § 3553(a) include: the nature and circumstances of the offense; the need for the sentence imposed; the kinds of sentences available; any pertinent policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to any victims of the offense. This memorandum addresses the most relevant of those factors to aid this Honorable Court in sentencing Mr. DeTemple. Mr. DeTemple respectfully requests that this Honorable Court vary downward and impose the lowest available sentence for his conduct, and sentence him to the 5-year minimum contemplated in the plea agreement.

### 1. The nature and circumstances of the offense and the history and characteristics of the defendant.

The five-year minimum period of incarceration contemplated in the plea agreement is warranted in consideration of the nature and circumstances of the offense, and the history and characteristics of Mr. DeTemple. The nature of Mr. DeTemple's conduct is serious. This cannot be denied. There are real victims in these cases, and Mr. DeTemple engaged in collecting and viewing child pornography. However, Mr. DeTemple did not engage in the active distribution of child pornography and did not make any attempts to make actual contact with any victims. Mr. DeTemple sought out and located explicit content online and downloaded it for his own personal use; even going so far as to download the illegal content onto a removable hard drive. Mr. DeTemple is not a dangerous predator who was openly trading illegal material for pecuniary gain;

he is a young man who was seeking out and downloading extremely harmful content for his personal pleasure. Neither act is excusable, but there is certainly a distinction between the nature and circumstances bringing about the offense conduct.

Mr. DeTemple pleaded guilty by way of information. Upon retaining counsel and being given a full understanding of all available options, Mr. DeTemple chose to plead guilty and began the process of negotiating the best possible outcome through a plea agreement. These circumstances should be considered in whether to vary down from the guidelines as there is certainly a theme of acceptance of responsibility and seeking rehabilitation in Mr. DeTemple's case. Mr. DeTemple's history, or lack thereof also warrants a variance Mr. DeTemple has never had so much as a serious traffic infraction prior to this incident, and yet he immediately owned up to his actions upon being confronted with the brutal truth, voluntarily sought treatment to better understand impulse control and to learn about how to avoid risks of reoffending, and appreciates that he will spend a lengthy period of time incarcerated. The five-year floor contemplated in the plea agreement is sufficiently warranted given the nature and circumstances of the case, as well as Mr. DeTemple's personal history and characteristics.

With respect to Mr. DeTemple's specific conduct, anything more than a five-year sentence would be excessive and greater than necessary. The Sentencing Commission released a report to Congress on the guidelines for non-production offenders in Child Pornography cases. *See* 2012 COMMISSION REPORT. The report was compiled in large part due to an increasing rate of below-guideline sentences in non-production cases and noted that the Commission would "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions." *Id.* at ii. Importantly, the report stated that internet technology and its use in these types of cases has led to many cases where, "… the existing

sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id.* at ii-iii. Specifically, it was noted that "[a]lthough child pornography validates and normalizes the sexual abuse of children," social science research has not established that viewing child pornography "causes individuals to commit sex offenses." *Id.* at vii, 102 (internal quotations omitted). This is consistent with Dr. Pass and Dr. Hughes professional evaluation of Mr. DeTemple, that while he recognizes the seriousness of his offending, there is little risk that he will reoffend.

Mr. DeTemple did not use sophisticated methods to attempt to hide his offense. There are a plethora of applications and technologies available to offenders seeking to hide their conduct; VPN blockers, closed peer-to-peer sharing, applications that hide identity, and the dark web are just some of these technologies. In comparison, Mr. DeTemple's methodology was primitive at best. Mr. DeTemple used an open-sourced peer-to-peer network and removed some material onto a removable hard-drive while inadvertently leaving other files available for the download of others in the peer-to-peer network. Furthermore, Mr. DeTemple was not involved with any internet "communities" devoted to child pornography and child sexual exploitation, and has no history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense. *Id.*

A five-year term of imprisonment will also provide adequate deterrence for other individuals who may engage in similar conduct. Potential offenders will see Mr. DeTemple's situation and realize that five years in prison is a significant deterrent to accessing and possessing child pornography, on top of the fact that Mr. DeTemple will be a felon for the rest of his life and will have to register as a sex offender, and others will likewise not want to live with that stigma. Mr. DeTemple and his family have already endured a considerable amount of shame and

humiliation in their community due to the instant matter. As stated earlier, Mr. DeTemple immediately lost his job upon entering his plea of guilty.

The only instances of individuals not being deterred by Mr. DeTemple's sentence would be in those cases where individuals have an addiction or other mental infirmity that prevents them from seeing the error of their ways. In those cases, a harsher penalty for Mr. DeTemple will not serve as a deterrent.

### 2. The need for the sentence imposed.

Mr. DeTemple is a first-time offender and has never had any negative interaction with law enforcement prior to the instant matter. That is not to say that Mr. DeTemple's offense is not serious. Mr. DeTemple accepted responsibility for his conduct and pleaded guilty in this case. To that end, Mr. DeTemple even waived his right to be indicted by grand jury and entered a plea to a criminal information. Additionally, Mr. DeTemple voluntarily entered a treatment program to rehabilitate himself for the future. He has successfully completed all required treatment up to this point and will continue to seek treatment as long as it is feasible and possible for him to do so. Furthermore, Mr. DeTemple is a college-educated individual and has shown his ability to work hard and be a productive member of society; he was stably employed before he pleaded guilty in this case, indicating that he can hold a job for a significant period.

As a result of this case, Mr. DeTemple has already lost his employment, and his new status as a felon will significantly hinder his ability to find employment in the future. Considering that Mr. DeTemple will have to work to pay off the imposed restitution payments as well as avoiding becoming a burden upon society, Mr. DeTemple's sentence should be as short as statutorily possible so that Mr. DeTemple he can be released and find gainful employment expeditiously, thereby imposing the least cost on federal taxpayers, while also paying restitution to the victims of this offense.

### 3. The kinds of sentences available.

The least serious sentence available is a five-year, statutorily imposed minimum term of incarceration. Though the guideline range is higher than this five-year floor, the availability of a higher sentence does not mean that it would better accomplish the goals stated in 18 U.S.C. § 3553(a). A defendant's sentence should be sufficient, but not greater than necessary to accomplish the goals stated in 18 U.S.C. § 3553(a), *Kimbrough,* 552 U.S. at 101, and Mr. DeTemple submits that only a five-year sentence is sufficient but not greater than necessary in this case. It should be noted that in the aforementioned 2012 COMMISSION REPORT, "… the Commission unanimously believe[d] that, if Congress cho[]se to align the penalties for possession with the penalties for receipt and maintain a statutory mandatory minimum penalty, that statutory minimum should be less than five years." 2012 COMMISSION REPORT at xx. In part, the Government relied upon negotiating for a plea with a five-year floor in exchange for not charging an additional count of Receipt within the criminal information in this case.

Counsel submits that although Mr. DeTemple ultimately accepted the plea, he did so with the understanding that he was rather limited in bargaining power or leverage in negotiation. This was not a drug case where cooperation could be contemplated, and due to the primitive or elementary nature of how Mr. DeTemple went about committing the crime, he was not somebody that could offer any potential value to the Government as a cooperator. Thus, he was left with a choice that essentially boiled down to either accepting a plea to possession with a five-year floor by way of criminal information or being indicted on charges of both possession AND receipt, and ultimately facing the same five-year floor regardless. Mr. DeTemple chose the path of least resistance as it was important to Mr. DeTemple to be able to present himself in Court and take responsibility for himself while simultaneously and voluntarily engaging in the treatment process.

### 4. The need to provide restitution to any victims of the offense.

There are sixteen victims in this case who requested restitution. Fifteen of the victims made prompt requests for resolution shortly after Mr. DeTemple entered a plea of guilty to the information. After negotiations, the fifteen original victims agreed to accept the mandatory minimum of $3,000 in restitution. Thus, a total of $45,000 is due to the victims in this matter. Mr. DeTemple made hard decisions and considerable efforts to come up with this money, and has set aside the entire $45,000 prior to his sentencing hearing. This is an extraordinary feat and is not typical in these types of cases.

On April 27, 2021, Counsel was informed that a sixteenth victim made a restitution request. Counsel promptly began negotiating for restitution with the identified representative of victim sixteen, but as of the date of this filing, no resolution has been negotiated and no formal request for a specific amount of restitution has been presented to Counsel.

The plea agreement in this case notes several fines and costs that could be imposed by this Honorable Court. While almost all of the victims who requested restitution will have been promptly paid, the remaining costs and fines imposed are fairly large. While there is a requirement that Mr. DeTemple pay 50% of his prison salary towards these costs, the costs will certainly be paid off at a faster rate upon release from prison, when Mr. DeTemple is able to return to the workforce. A sentence to the shortest period of incarceration available, the five-year sentence, would allow Mr. DeTemple opportunity to make financial amends with his actions.

### 5. The need to avoid unwanted sentencing disparities.

The Sentencing Commission created the enhancements within section § 2G2.2 to enhance a sentence in atypical cases; section § 2G2.2 was not supposed to enhance a defendant's sentence in every case. Presently, the guideline enhancement for "use of a computer" and peer-to-peer filing applies to even typical defendants, like Mr. DeTemple, due to the nature of technology. 2012

COMMISSION REPORT at 313. At least one scholar has noted that defendants in child exploitation cases have seen their guideline ranges substantially increase over the years due to increased use and accessibility of computers and technology. Brent E. Newton, *A Partial Fix of a Broken Guideline: A Proposed Amendment to Section 2G2.2 of the United States Sentencing Guidelines*, 70 Case W. Res. L. Rev. 53, 60 (2019). The enhancements should only be used when the facts and circumstances of a case are atypical, not where most defendants charged receive the enhancements.

Currently, the guidelines cannot distinguish between the relative culpability and dangerousness between defendants charged with the same offense. The lack of a meaningful standard dismantled the ability to adequately judge individual defendants based upon only their relevant conduct, and results in increased sentencing disparities. *Id.* The United States Sentencing Commission noted as much in its report, stating that the "§ 2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphasis on offenders' community involvement and sexual dangerousness. As a result, penalty ranges are too severe for some offenders and too lenient for other offenders." *Id.* at 61 (citing 2012 COMMISSION REPORT at xviii). Mr. DeTemple's conduct, though severe, does not reflect that of the most dangerous sexual offenders, and thus, Mr. DeTemple should not be excessively penalized with a guideline range that is based on draconian measures of culpability.

A review of the judgements in cases involving defendants similarly situated to Mr. DeTemple in the Western District of Pennsylvania since the adoption of the 2016 Amendments illustrates that the concern about sentence disparity, in addition to concern about the increasing severity of the guideline ranges for similarly situated defendants, has greatly influenced a trend towards downward variances. For example, since the Amendments became effective on November 1, 2016, nineteen (19) defendants have been convicted and sentenced in the Western District for a

count of § 2252(a)(2), with either no further penalty or concurrent sentences for additional counts.[12] In other words, these nineteen defendants were sentenced for the same offense for which Mr. DeTemple awaits sentencing.

These similarly situated defendants received sentences ranging from the mandatory minimum of 60 months, to a high of 180 months, with an average of 94 months. Notably, over the last two years, sentences above 100 months have been reserved for defendants with a prior criminal history category. *See Whisner*, *Thompson*, and *Young*.

Furthermore, since the adoption of the 2016 Amendments, four similarly situated defendants, with **factual narratives substantially identical** to Mr. DeTemple, in the Western District have received sentences at the 60-month mandatory minimum. *See Cadle*, *Kaper*, *Boynton*, and *Cotman*.

Mr. DeTemple submits that this is the type of disparity the 2016 Amendments take a step toward correcting, and is precisely the kind of disparity contemplated by Professor Newton's law review article in 2019, as well as the 2012 Sentencing Commission Report, mentioned *Supra*. Sentencing Mr. DeTemple to a 60-month period of confinement, in light of the substantially similar conduct, lack of a prior record, and acceptance of responsibility shared by Mr. Cadle, Mr. Kaper, Mr. Boynton, Mr. Cotman, and Mr. Riley would effectively advance efforts to sentence similarly situated defendants consistently, and within the jurisdiction, thus avoiding disparity and

---

[12] *See United States v. Goehring*, 2:16-257; *United States v. Plascjak*, 2:17-16; *United States v. Piper*, 2:17-54; *United States v. Williams*, 2:17-84; *United States v. Cadle*, 2:17-147; *United States v. Kosmatine*; 1:17-14; U*nited States v. Williams*, 1:17-16; *United States v. Gaworski*, 2:17-205; *United States v. Kaper*, 2:17-231; *United States v. Russell*, 2:17-233; *United States v. Boynton*, 1:17-24; *United States v. Bretz*, 1:18-21; *United States v. Cotman*, 2:18-196; *United States v. White*, 1:18-24; *United States v. Fichter*, 2:18-229; *United States v. Whisner*, 2:19-72; *United States v. Thompson*, 1:19-17; *United States v. Young*, 2:19-325; and *United States v. Riley*, 2:20-140.

the risk of increasing severity that results more from laws that have not caught up with technology than a meaningful attempt to sentence according to the legitimate purposes of punishment.

Mr. DeTemple respectfully requests a downward variance on his potential sentence to avoid such a sentencing disparity. Mr. DeTemple has no criminal history points and no underlying convictions for sex offenses, meaning that Mr. DeTemple is the type of defendant to fall within the Commission's analysis. Just as the Commission found in its 2012 congressional report, Mr. DeTemple is facing an average guideline range 60 months higher that he would if he were charged and convicted under the possession statute and had his guideline range increased with a distribution enhancement, though the conduct would have been the same. This will only create massive disparities between defendants with substantially similar conduct, and a five-year sentence for Mr. DeTemple will better serve the goals of sentencing between defendants with similar conduct.

## IV.     CONCLUSION

Mr. DeTemple and his family will feel the consequences of his actions for years to come. Not only will they forever feel the shame from the surrounding community, but Mr. DeTemple will be paying costs once he is eventually released from the custody of the Bureau of Prisons. He has accepted responsibility for his conduct and has taken deliberate actions to correct and modify his behavior. Mr. DeTemple respectfully requests a downward variance on his potential sentence according to the sentencing factors of 18 U.S.C. § 3553(a) and that this Honorable Court decline to enhance Mr. DeTemple's offense level with the two-level upward enhancement under USSG §2G2.2(b)(3)(F). Therefore, Mr. DeTemple requests a sentence of five-years' incarceration as such a sentence is sufficient but not greater than necessary to accomplish the goals of sentencing.

        Respectfully submitted,

        /s/ Samir Sarna
        Samir Sarna, Esq.
        Attorney for Jon DeTemple

CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2021, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Heidi M. Grogan
United States Attorney's
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

/s/ Samir Sarna
Samir Sarna, Esq.
Attorney for Jon DeTemple
Pa. Id. No. 310372
Worgul, Sarna & Ness, LLC
429 4th Avenue,
Suite 1700
PGH, PA 15219
(781) 726-0647

April 27, 2021